**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 1:21-cv-0016 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| CYRUSONE INC., LYNN A. WENTWORTH, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ALEX SHUMATE, DAVID FERDMAN, | : **SECURITIES EXCHANGE ACT OF** |
| JOHN W. GAMBLE, JR., T. TOD NIELSEN, | : **1934** |
| DENISE OLSEN, and WILLIAM E. | : |
| SULLIVAN, | : **JURY TRIAL DEMANDED** |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against CyrusOne Inc. ("CyrusOne or the "Company") and the members CyrusOne board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of CyrusOne by affiliates of Kohlberg Kravis Roberts & Co. L.P. and Global Infrastructure Management, LLC ("the Buyout Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 17, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cavalry Merger Sub LLC ("Merger Sub"), a wholly owned subsidiary of Cavalry Parent L.P. ("Parent"), will merge with and into CyrusOne with CyrusOne surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each CyrusOne common share issued and outstanding will be converted into the right to receive $90.50 (the "Merger Consideration").

3.  As discussed below, Defendants have asked CyrusOne stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") and DH Capital, LLC ("DH Capital" and with Morgan Stanley, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CyrusOne stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CyrusOne common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Lynn A. Wentworth has served as a member of the Board since 2014 and is the Chair of the Board.

11. Individual Defendant Alex Shumate has served as a member of the Board since 2013 and is the Lead Independent Director.

12. Individual Defendant David Ferdman has served as a member of the Board since 2013 and is the Interim President and Chief Executive Officer of the Company.

13. Individual Defendant John W. Gamble Jr. has served as a member of the Board since 2014.

14. Individual Defendant T. Tod Nielsen has served as a member of the Board since 2013.

15. Individual Defendant Denise Olsen has served as a member of the Board since 2021.

16. Individual Defendant William E. Sullivan has served as a member of the Board since 2013.

17. Defendant CyrusOne is incorporated in Maryland and maintains its principal offices at 2850 N. Harwood St., Suite 2200, Dallas, Texas 75201. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CONE."

18. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

20. CyrusOne is a premier global REIT specializing in design, construction and operation of more than 50 high-performance data centers worldwide. The Company provides mission-critical facilities that ensure the continued operation of IT infrastructure for approximately 1,000 customers, including approximately 200 Fortune 1000 companies. A leader in hybrid-cloud and multi-cloud deployments, CyrusOne offers colocation, hyperscale, and build-to-suit environments that help customers enhance the strategic connection of their essential data infrastructure and support achievement of sustainability goals. CyrusOne data centers offer world-class flexibility, enabling clients to modernize, simplify, and rapidly respond to changing demand.

Combining exceptional financial strength with a broad global footprint, CyrusOne provides customers with long-term stability and strategic advantage at scale.

21. On November 15, 2021, CyrusOne announced that it had entered into the Proposed Transaction:

> DALLAS--(BUSINESS WIRE)--Nov. 15, 2021-- CyrusOne Inc. (NASDAQ: CONE) (the "Company" or "CyrusOne"), a premier global data center REIT, KKR, a leading global investment firm, and Global Infrastructure Partners ("GIP"), one of the world's leading infrastructure investors, today announced a definitive agreement pursuant to which KKR and GIP will acquire all outstanding shares of common stock of CyrusOne for $90.50 per share in an all-cash transaction valued at approximately $15 billion, including the assumption of debt.
>
> The $90.50 per share purchase price reflects a premium of approximately 25% to CyrusOne's unaffected closing stock price on September 27, 2021, the last full trading day prior to published market speculation regarding a potential sale of the Company.
>
> "This transaction is a testament to the tremendous work by the entire CyrusOne team. We have built one of the world's leading data center companies with a presence across key U.S. and international markets supporting our customers' mission-critical digital infrastructure requirements while creating significant value for our stockholders," said Dave Ferdman, Co-Founder and interim President and Chief Executive Officer of CyrusOne. "KKR and GIP will provide substantial additional resources and expertise to accelerate our global expansion and help us deliver the timely and reliable solutions at scale that our customers value."
>
> "Today's announcement is the culmination of a robust strategic review process conducted by the CyrusOne Board of Directors to determine the best path forward for the Company and maximize stockholder value," said Lynn Wentworth, Chair of the CyrusOne Board of Directors. "This transaction provides CyrusOne stockholders with significant value and simultaneously positions the Company to even better serve its customers to meet their needs in key markets around the world."
>
> "CyrusOne has built one of the strongest data center companies in the world and has a strong track record of development and operational expertise in addition to delivering best-in-class service to its customers. We are excited to work together with the

Company's proven team to build on CyrusOne's market leadership and support their customers' growing data center infrastructure requirements," said Waldemar Szlezak, Managing Director at KKR, and Will Brilliant, Partner at GIP. "We see numerous opportunities ahead to continue expanding CyrusOne's footprint across key global digital gateway markets and look forward to leveraging our global resources, access to long term capital and deep expertise to support the Company's growth."

**Transaction Approvals and Timing**

The transaction, which was unanimously approved by the CyrusOne Board of Directors, is not subject to a financing condition and is expected to close in the second quarter of 2022, subject to satisfaction of customary closing conditions, including regulatory approvals and approval by CyrusOne stockholders.

Upon completion of the transaction, CyrusOne will be a privately held company wholly owned by KKR and GIP and CyrusOne's common stock will no longer be listed on any public market. KKR's investment is being made primarily from its global infrastructure and real estate equity strategies, and GIP's investment is being made from its global infrastructure funds.

**Advisors**

Morgan Stanley & Co. LLC and DH Capital, LLC are acting as financial advisors to CyrusOne and Cravath, Swaine & Moore LLP, Venable LLP and Eversheds Sutherland (International) LLP are acting as its legal counsel.

Goldman Sachs & Co., Barclays, Wells Fargo Securities, LLC, Citigroup and J.P. Morgan are acting as financial advisors to KKR and GIP, with KKR Capital Markets leading the structuring on the financing. Kirkland & Ellis LLP and Dentons (UK & Europe) are acting as legal counsel to the acquiring consortium and KKR, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to GIP.

\* \* \*

22.    The Board has unanimously approved the Proposed Transaction. It is therefore imperative that CyrusOne's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Proxy Statement**

23. On December 6, 2021, CyrusOne filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by CyrusOne management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that CyrusOne management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

7

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income, Adjusted EBITDA, and Normalized FFO, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

29. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the line items used to calculate the unlevered free cash flows of the Company; (ii) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of the range of implied exit multiples of 19.0x to 21.0x; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 5.6% to 6.4%.

30. With respect to Morgan Stanley's *Analysts' Price Targets Analysis* for the Company, the Proxy Statement fails to disclose: (i) the price targets reviewed; (ii) the 20 equity research analysts observed; and (iii) the discount rate used.

31. With respect to Morgan Stanley's *Comparative Public Trading Multiples Analysis* for CyrusOne, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Morgan Stanley in the analysis.

32. With respect to Morgan Stanley's *Precedent Transaction Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Morgan Stanley in the analysis.

33. With respect to Morgan Stanley's *Precedent Premiums Paid Analysis* for the Company, the Proxy Statement fails to disclose the premiums paid for each selected precedent transaction observed in the analysis.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of CyrusOne within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of CyrusOne, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CyrusOne, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CyrusOne, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 3, 2022

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*